**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

ROCHESTER LABORERS' PENSION,
WELFARE-S.U.B., ANNUITY AND
APPRENTICE AND TRAINING FUNDS,
*et al.*,

                    Plaintiffs,           DECISION & ORDER
                                                  07-CV-6171-CJS
    -vs-

MASSA CONSTRUCTION, *et al.*,

                    Defendants.

_____

**APPEARANCES**

For plaintiffs:                           Jennifer A. Clark
                                       Blitman & King LLP
                                       Franklin Center, Suite 300
                                       443 North Franklin Street
                                       Syracuse, NY 13204

For defendants:                        Alan R. Peterman
                                       Hiscock & Barclay, LLP
                                       P.O. Box 4878
                                       Syracuse, NY 13221

**INTRODUCTION**

    **Siragusa, J.**  Plaintiffs Rochester Laborers' Pension Fund, Rochester Laborers' Welfare-S.U.B. Fund, Rochester Laborers' Annuity Fund, Rochester Laborers' Apprentice and Training Funds, ("the Rochester Funds") and Laborers' International Union of North America, Local Union No. 435 ("Local No. 435") brought this action against Defendants Massa Construction, Inc. and Nicholas P. Massa, individually, to collect fringe benefit

contributions, deductions, interest, liquidated damages and attorney's fees and costs and disbursements pursuant to a collective bargaining agreement, Agreements and Declarations of Trust, a Collections Policy, a Stipulation of Settlement and for Entry of Judgment, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2) and 1145, and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Currently pending before the Court are Defendants' motion for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, ECF No. 22, and Plaintiffs' cross-motion for entry of judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure against Defendants in the amount of $52,830.64, ECF No. 26.

For the reasons that follow, Defendants' motion for declaratory judgment is denied, and Plaintiffs' cross-motion for entry of judgment is granted.

## BACKGROUND[1]

In June, 2007, Defendant Massa Construction, Inc., became signatory to a collective bargaining agreement ("CBA") between Plaintiff Local Union No. 435 ("Local No. 435") and the Construction Industry Association of Rochester, N.Y., Inc. and Certain Independent Contractors. Under the CBA, Defendants agreed to remit contributions to Plaintiffs on behalf of all of hours of laborers' work performed within Local No. 435's geographic jurisdiction. The CBA did not require Defendants to make remittances to outside union benefit plans for laborers' work within Local No. 435's jurisdiction.

According to Plaintiffs, Defendants failed to remit contributions and deductions

---

[1] The material facts of this case are not in dispute.

between November 2003, and June, 2004. Plaintiffs subsequently filed the instant action on March 30, 2007, to collect the delinquent fringe benefit contributions, deductions, interest, liquidated damages, attorneys' and paralegal fees, and costs and disbursement. *See* Compl., ECF No. 1.

In settlement of this action, Defendants executed a "Stipulation of Settlement and for Entry of Judgment" on November 19, 2009. *See* Clark Aff. Ex. A, Apr. 22, 2011, ECF No. 26-2. Pursuant to the Stipulation, Defendants agreed to pay the Plaintiffs the sum of $9,000.00 in settlement of an alleged debt of $45, 563.01, comprised of contributions and dues ($7,258.56), interest ($8,337.78), liquidated damages ($8,109.87), audit fees ($479.35), and attorneys' fees ($21,467.15).  Aff., Ex. A, ECF No. 26-2. The parties both agreed to "abide by the terms and conditions of [the] Collective Bargaining Agreement with the Plaintiff Union and abide by the Plaintiff Funds' Agreements and Declarations of Trusts and Collections Policy . . . ." *Id.*, Ex. A, ¶ 7(D). One of the events of default contained in the Stipulation of Settlement is the Defendants' failure to remit fringe benefit contributions and dues on a timely basis. *Id.*, Ex. A, ¶ 7(G).

Defendants agreed that if they failed to abide by any of the settlement terms, Plaintiffs could take judgment against them for $36,563.01, plus interest, attorneys' fees, and costs since October 6, 2009. Specifically,

> If the Debtors default as defined in paragraph No. 7(G), the Plaintiffs are entitled, without notice to the Defendants of said default, without demand upon Defendants for payment, and without notice to the Defendants of an application for entry of judgment, to file this Stipulation of Settlement with the Court, and a judgment will be taken against the Defendants for the entire unpaid balance of the debt set forth in paragraph No. 5 above plus any and all interest and attorneys' fees and costs incurred since October 6, 2009 in connection with collection of

>the debt . . . .

*Id.,* Ex. A, ¶ 7(H).

Defendants acknowledge that they remitted fringe benefit contributions and dues on a timely basis through June, 2010, when they began to withhold remittances on the basis of an alleged issue concerning the Rochester Funds' failure to reciprocate fringe benefits to the Local 103 Funds.[2] "Reciprocation" is a process by which a fund that receives fringe benefit contributions for a laborer who is a participant in another local fund, transfers those fringe benefit contributions to that laborer's "home" fund so that laborers who work outside the geographic jurisdiction of their home local will receive proper credit for the fringe benefit contributions they earn.

Under the CBA, Defendants were obligated to remit contributions and deductions to the Rochester Funds, and the monies were to be remitted on behalf of hours worked by laborer employees in the nine counties covered by Local No. 435's jurisdiction. If the employees were members of a union other than Local No. 435, the Rochester Funds would send the contributions to the employee benefit plans associated with that other union. In this case, a Reciprocal Agreement existed between the Rochester Funds and the Local 103 Funds, prior to their merger in 2010.

Sometime in 2010, Defendants became aware that Rochester Funds were not going to reciprocate fringe benefit contributions remitted on behalf of Local 103 members back to the Local 103 Funds until the merger between the two Local Funds was effectuated. In

---

[2] On December 21, 2010, the Local 103 Funds merged with the Rochester Laborers' Pension Fund, the Rochester Laborers' Welfare-S.U.B. Fund, and the Rochester Laborers' Annuity Fund, and the Rochester Funds became the successor and continuing trust funds.

...
...
...

response, Local 103 members filed a complaint against the Local 103 Funds with the Department of Labor on the basis that the laborers had lost their benefits during this time period due to the Rochester Funds' withholding of the contributions. During the merger negotiations in 2010, Defendant Nicholas Massa was the Employer Trustee and fiduciary of the Local 103 Funds. Thus, acting in the interest of the Local 103 Funds, Defendant Massa authorized a temporary withholding of fringe benefit contributions to Plaintiffs from July, 2010 to October, 2010, reasoning that any remittance to Plaintiffs would result in a breach of Massa's fiduciary duties to the Local 103 Funds.

The merger between the two Local Funds was slated to become final on December 31, 2010. On December 3, 2010, Defendants remitted the delayed remittance reports and fringe benefit contributions and dues to the Plaintiffs, and have continued to make timely payments to the Rochester Funds since the merger.

Defendants concede that they breached the Stipulation of Settlement by failing to remit the monies on a timely basis, but assert that they were justified in doing so because Massa had knowledge of the reciprocation dispute, and that any payment to the Rochester Funds would therefore have breached Massa's fiduciary duties in his role as trustee to the Local 103 Funds under ERISA. Def. Mem., ECF No. 22-18, at 9.

## DISCUSSION

### *Declaratory Judgment*

Defendants have moved for relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, *upon the filing of an appropriate pleading*, may declare the rights and other legal relations of

> any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201 (emphasis added). Defendants' motion requests a declaration that they did not breach the Stipulation of Settlement when they temporarily withheld remittance of fringe benefit contributions to Plaintiffs pending resolution of the reciprocation issue involving the Local 103 Funds. Def. Mem. at 1.

Plaintiffs argue that the Court does not have jurisdiction to award the requested declaratory relief because § 2201 has no provision authorizing a motion for such relief. Pl. Mem., ECF No. 26-1, at 9-11. Plaintiffs cite to *Int'l Brotherhood of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995), which held, "[b]ecause an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment." While the Court is unaware of any controlling Second Circuit precedent endorsing that position, at least two district courts within this circuit and other circuit courts have held that a party requesting declaratory relief must initiate a declaratory judgment action and comply with the general rules of pleading under the Federal Rules of Civil Procedure. *See Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, No. 11 Civ. 3108, 2012 WL 3283479 (S.D.N.Y. Aug. 13, 2012) ("Whichever form of pleading initiates a declaratory judgment action, it must meet the pleading requirements of Federal Rule of Civil Procedure 8."); *Jones v. McMahon*, No. 5:98-CV-0374, 2007 WL 2027910, *5 n.15 (N.D.N.Y. July 2007) (quoting *Int'l Bhd. of Teamsters*, 160 F.R.D. 452, 455–56); *Thomas v. Blue Cross and Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010) ("It is true that Robertson's motion sought

an order declaring that his claims are not released, but Robertson did not file a complaint for a declaratory judgment. Robertson instead filed a motion in a postjudgment proceeding. As the Ninth Circuit recently explained, ' 'a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment.' ' *Kam-Ko Bio-Pharm Trading Co., Ltd.-Australasia v. Mayne Pharma (USA), Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (quoting *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y.1995))"); *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (same).

Regardless of whether Defendants' motion is procedurally correct, the relief requested under Defendants' motion for declaratory judgment is the converse of the relief requested under Plaintiffs' motion for entry of judgment, and could have simply been raised in opposition to Plaintiffs' motion. Therefore, the Court has addressed the substantive question raised, rather than deny Defendants' motion on procedural grounds.

***Breach of Stipulation of Settlement***

Defendants aver that they were "justified" in delaying payment of the fringe benefit contributions to the Rochester Funds until the reciprocity issue between the Rochester Funds and the Local 103 Funds was resolved, and that their nonperformance under the Stipulation of Settlement should be excused because timely contributions to the Plaintiff Funds would have necessarily breached Defendant Massa's fiduciary duty to the Local 103 Funds, a non-party to the Stipulation and CBA.  Def. Mem. at 9–10.

"[A] stipulation for settlement is a contract, interpreted under general principles of contract law." *Coalition on West Valley Nuclear Wastes v. Bodman*, 625 F. Supp. 2d 109, 120 (W.D.N.Y. 2007) (citing *Reich v. Best Built Homes*, 895 F. Supp. 47, 49 (W.D.N.Y.

1995); *see also Pepco Energy Svcs., Inc. v. Stefan F. Geiringer*, No. CV07-4809, 2009 WL 3644295 (E.D.N.Y. Oct. 30, 2009);  *Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir. 1986) (applying New York's substantive law of contracts to settlement agreements in federal courts). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation." *BCM Development, LLC v. Oprandy*, 490 Fed.Appx. 409 (2d Cir. 2013) (summary order) (citation omitted).

Here, the parties agree that a contract exists, and that Defendants breached said contract. The issue before the Court then, is whether Defendants' breach should be excused on the ground that their performance was made legally impossible due to Defendants' potential breach of fiduciary duty to a third-party.

A party seeking to excuse contractual performance on the basis of legal impossibility must demonstrate that: (1) the event made the performance impracticable; (2) the non-occurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation than the law imposes. *See* Restatement (Second) of Contracts § 261 (1981). The defense is to be applied narrow: "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v Central Mkts.*, 70 N.Y.2d 900, 902 (1987).

The Court finds the defense of legal impossibility is inapplicable here, as Defendants have presented no evidence or law to support their position that the potential breach of a fiduciary duty to a third-party renders performance of a contract impossible. It appears that at all times, Defendants were able to timely remit their contributions and deductions to the Plaintiffs under the terms of the Stipulation of Settlement,[3] and the breach of fiduciary duty owed to the Local 103 Funds by Defendant Massa that would have occurred if Defendants had remitted the contributions to Plaintiffs (but did not) is purely speculative in this context.

Defendants cite to *Keegan v. Steamfitters Local Union No. 420 Pension Fund*, 174 F. Supp. 2d 332 (E.D. Pa. 2001), to support their position that the mishandling of reciprocal payments by a trustee can constitute the breach of a fiduciary duty. The Court reads *Keegan* somewhat differently. In *Keegan*, the district court held a trustee/fiduciary of a plan may breach his fiduciary duties to the plan if he fails to abide by and enforce the clear and unambiguous terms of the plan's documents, *i.e.*, a reciprocal agreement.[4] Such is not the case here.  Assuming, *arguendo*, Massa owed a fiduciary duty to the Local 103 Funds as a trustee, he was not performing a fiduciary function to the Local 103 Funds at the time he was remitting contributions to Plaintiffs under the CBA and Stipulation of Settlement. An

---

[3] It is worth noting that Defendants are also not excused from performing under the terms of the CBA itself. In ERISA cases involving attempts to recover delinquent fringe benefit contributions, courts generally recognize only two affirmative defenses—that the fringe benefits contributions are illegal or that the CBA was void, *see Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 314 (2d Cir. 1990) (collecting cases)—neither of which is applicable here.

[4] Following appeal of the bench trial decision on the surviving claims in *Keegan*, the Third Circuit did not find any of the defendants liable for breaching a fiduciary duty under ERISA by failing to abide by plan documents or for mishandling reciprocal payments. *Keegan v. Steamfitters Local Union No. 420 Pension Plan*, 67 Fed. Appx. 744 (3rd Cir. June 26, 2003).

ERISA fiduciary may wear "two hats," but must "wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Id.* at 226. Here, Massa, as an employer bound to the CBA, had a fiduciary duty to Plaintiffs under the relevant set of agreements. He was not obligated to remit fringe benefits to the Plaintiffs under the CBA for the benefit of the Local 103 Funds or remit contributions to the Local 103 funds directly, and thus remittance was not a fiduciary function with respect to the Local 103 Funds. To the contrary, Defendants were liable as fiduciaries to Plaintiffs because the unpaid contributions were assets of the Rochester Funds and therefore, under the terms of the CBA, Massa owed a fiduciary duty only to the Rochester Funds. Yet Massa himself admits that he willfully "delayed remitting those funds until [he] was convinced that the contribution would be properly credited to the Local 103 Fund participants," Massa Reply Aff., ¶ 14, in violation of both the CBA and the Stipulation of Settlement.

Defendants also have not produced any evidence establishing that the Local 103 Funds required Defendants to withhold fringe benefit contributions, nor have they submitted any plan document of the Rochester Funds authorizing the withholding of fringe benefit contributions under any circumstance.

Moreover, the Local 103 Funds and their participants had no claim against Defendants to collect the unremitted monies and no standing under ERISA to sue Defendants to recover the monies. Defendants, as the contributing employers under the CBA, were not parties to the Reciprocal Agreement, and the participants of the Local 103 Funds were not beneficiaries pursuant to the CBA between Defendants and the Rochester Funds. *See, generally, Alfarone v. Bernie Wolff Const. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986) (holding that an ERISA action must be brought by an individual with a contractual right to the monies sought); *see also* 29 U.S.C. § 1132(a)(1)(B) ("a civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."). Further, Defendants present no evidence that their obligation under the CBA to remit contributions was dependent upon the Rochester Funds' compliance with the Reciprocal Agreement. *See* Brown Aff., Ex. E, ECF No. 26-5.

In summary, the Court finds that the Reciprocal Agreement between the Rochester Funds and the Local 103 Funds did not alter the Defendants' contractual obligations under the CBA to remit contributions to the Plaintiffs in a timely manner. Defendants have presented no evidence or legal authority that their withholding of the remittances would have breached Massa's fiduciary duty to the Local 103 Funds or that the fiduciary duty owed to Local 103 Funds, assuming one existed, rendered performance under the Stipulation of Settlement impossible.[5]

---

[5] Ostensibly, only if Defendants actually paid the contributions to Plaintiffs (who then withheld the reciprocal payments) might the Local 103 Funds have a claim against Massa for

Defendants' withholding of these monies clearly breached the Stipulation of Settlement, and they have not provided a sufficient basis to excuse the breach.[6]

***Entry of Judgment***

Pursuant to the Stipulation of Settlement, Plaintiffs now move for an entry of judgment against Defendants in the amount of $52,830.64, consisting of the suspended debt of $36,563.01, $5,210.98 in interest through June 2, 2011, and $11,056.65 in attorneys' fees and costs incurred by Plaintiff during the period October 7, 2009 through April 18, 2011. Pl. Mem. at 7. Defendants have not contested Plaintiffs' calculations.

Here, it is undisputed that Defendants failed to make the required payments in accordance with the Stipulation, and therefore defaulted under the Stipulation of Settlement. For the reasons previously discussed, Defendants have not shown cause to invalidate the contract, or that it was legally impossible to perform under its terms. Accordingly, Plaintiffs' motion for entry of judgment is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion for declaratory judgment, ECF No. 22, is denied, and Plaintiffs' cross-motion for entry of judgment, ECF No. 26, is

---

breach of fiduciary duty if he then failed, as trustee, to enforce the Reciprocal Agreement between the Local 103 Funds and the Rochester Funds. *See Keegan,* 174 F. Supp. 2d 332, 339 ("the trustees must be judged on the basis of whether or not they acted 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims.' 29 U.S.C. § 1104(a)(1)(B) (2000).").

[6] In the alternative, Defendants' motion raises defenses that are expressly prohibited under the Stipulation of Settlement, which provides that, in the event of a default, Plaintiffs are entitled to proceed *ex parte* for entry of judgment, and that Defendants "will not raise any defenses, including, but not limited to, those defenses listed in FRCP Rule 12 and CPLR Rule 3211, to the filing of the this Stipulation of Settlement." Clark Aff., Ex. A, ¶ 7 (H)-(K).

granted.  Judgment shall be entered for Plaintiff and against Defendants in the amount of $36,563.01, plus $5,210.98 in interest calculated from October 7, 2009 until June 2, 2011 together with post-judgment interest pursuant to 28 U.S.C. § 1961, which shall be calculated by the parties and the Clerk of the Court using the formula set forth in 28 U.S.C. § 1961(a).[7] In addition, Plaintiffs are awarded $11,506.65 in attorneys' fees and costs incurred by Plaintiffs during the period October 7, 2009 through April 18, 2011. Plaintiffs' total award, subject to post-judgment interest, is $52,830.64.

So Ordered.

Dated: April 15, 2013
       Rochester, New York

                                  /s/ Charles J. Siragusa
                                  CHARLES J. SIRAGUSA
                                  United States District Judge

---

[7] "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Postjudgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment." *Andrulonis v. U.S.*, 26 F.3d 1224, 1230 (2d Cir. 1994) (citations omitted).